## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MICHAEL J. ORTMANN, Individually and
on behalf of all others similarly situated,

        Plaintiff,

v.

AURINIA PHARMACEUTICALS INC.,
PETER GREENLEAF, and JOSEPH
MILLER,

        Defendants.

Case No.: 8:22-cv-01335-GJH

Hon. George Jarrod Hazel

## ACDC INVESTMENTS LIMITED'S OPPOSITION
## TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND
## APPROVAL OF SELECTION OF COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 4

    I.    THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA. ....................................................................................................................4

    II.    FINANCIAL INTEREST IS MEASURED USING FOUR FACTORS WITH AN EMPHASIS ON RECOVERABLE LOSSES IN THE LITIGATION. ...................5

    III.    ACDC IS THE MOST ADEQUATE PLAINTIFF BECAUSE IT HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION THAT ALSO MEETS THE RULE 23 REQUIREMENTS. ................................................................9

    IV.    THE COURT SHOULD APPOINT ACDC AS THE LEAD PLAINTIFF. ......15

CONCLUSION..................................................................................................................... 17

ii

## TABLE OF AUTHORITIES

**Cases**

[2012] EWHC 1486 (Comm)................................................................................12

[2013] EWCA Civ 367 ......................................................................................12

*In re Bally Total Fitness Sec. Litig.*,
Nos. 04 C 3530, 04 C 3634, 04 C 3713, 04 C 3783, 04 C 3844, 04 C 3864, 04 C 3936, 04 C 4342, 04 C 4697, 2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005) ....................14

*In re Cable & Wireless, PLC, Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003) ................................................................6

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................5

*Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*,
No. 13 C 2111, 2013 U.S. Dist. LEXIS 106246 (N.D. Ill. July 30, 2013) ........................14

*Culver v. City of Milwaukee*,
277 F.3d 908 (7th Cir. 2002) ...................................................................13

*In re Enzymotec Ltd. Sec. Litig.*,
No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015)...................2, 9, 10, 11

*Foley v. Transocean Ltd.,*
272 F.R.D. 126 (S.D.N.Y. 2011) ...............................................................15

*Foster v. Maxwell Techs., Inc.*,
No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) ..7

*Howard v. Ray's LLC*,
No. 1:08-cv-627-RLY-MJD, 2011 U.S. Dist. LEXIS 113591 (S.D. Ind. 2011) ...............13

*Jiehua Huang v. Airmedia Grp., Inc.,*
No. 1:15-CV-4966 (ALC), 2015 U.S. Dist. LEXIS 178083 (S.D.N.Y. Nov. 10, 2015) ...17

*Kasilingam v. Tilray, Inc.,*
1:20-CV-03459-PAC, 2020 U.S. Dist. LEXIS 140885 (S.D.N.Y. Aug. 6, 2020) ............17

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...........................................................9

*Kuriakose v. Fed. Home Loan Mortg. Co.,*
No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ..........15

*In re LightInTheBox Holding Co., Sec. Litig.*,
  No. 13 Civ. 6016 (PKC), 2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013)........7

*Marjanian v. Allied Nev. Gold Corp.*,
  No. 3:14-cv-0175-LRH-WGC, 2014 U.S. Dist. LEXIS 203290 (D. Nev. Nov. 7, 2014)...8

*Nager v. Websecure, Inc.*,
  Nos. 97-10662-GAO; 97-10828-GAO; 97-10829-GAO; 97-11045-GAO; 97-11110-
  GAO, 1997 U.S. Dist. LEXIS 19601 (D. Mass. Nov. 26, 1997).........................................9

*Nasin v. Hongli Clean Energy Techs. Corp.*,
  No. 2:17-3244 (WJM), 2017 U.S. Dist. LEXIS 192673 (D.N.J. Nov. 21, 2017)..............12

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................................8

*Omdahl v. Farfetch Ltd.*,
  No. 19-CV-8657 (AJN), 2020 U.S. Dist. LEXIS 103935 (S.D.N.Y. June 10, 2020) .......17

*Palm Tran, Inc. v. Emergent Biosolutions*,
  No. PWG-21-955, 2021 U.S. Dist. LEXIS 244894 (D. Md. Dec. 23, 2021) .......................5

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................................................17

*Rand v. Monsanto Co.*,
  926 F.2d 596 (7th Cir. 1991) .............................................................................................13

*In re Red Hat, Inc. Sec. Litig.*,
  261 F.R.D. 83 (E.D.N.C. 2009) .........................................................................................14

*Reitan v. China Mobile Games & Ent. Group, Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)..................................................................................15

*Ruland v. InfoSonics Corp.*,
  No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ......7

*Sallustro v. Cannavest Corp.*,
  93 F. Supp. 3d 265 (S.D.N.Y. 2015)....................................................................................7

*Searcy v. eFunds Corp.*,
  No. 08-C-985, 2010 U.S. Dist. LEXIS 31627 (N.D. Ill. Mar. 31, 2010)...........................13

*Shiring v. Tier Techs., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) ........................................................................................14

*Smith v. Suprema Specialties, Inc.*,
  206 F. Supp. 2d 627 (D.N.J. 2002) ....................................................................................10

iv

*Sofran v. Labranche & Co.,*
   220 F.R.D. 398 (S.D.N.Y. 2004) ...................................................................................17

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*,
   No. 11-6247 (JBS/KMW), 2012 U.S. Dist. LEXIS 118693 (D.N.J. Aug. 22, 2012)....9, 11

*In re Surebeam Corp. Sec. Litig.*,
   No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003)3, 13

*Susman v. Lincoln Am. Corp.,*
   561 F.2d 86 (7th Cir. 1977) ...........................................................................................13

*Tchatchou v. India Globalization Capital, Inc.*,
   No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329 (D. Md. Feb. 28, 2019).............1

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
   209 F.R.D. 353 (S.D.N.Y. 2002) ...................................................................................10

## Statutes

15 U.S.C. §78u-4 ............................................................................................................ *passim*

## Other Authorities

Chloe Beresford, *Who's Blue Skye? What You Need To Know About The Firm Behind The Elliot-AC Milan Deal*,
   FORBES (Sept. 25, 2020) .................................................................................................13

Elinor Thomas, *Third parties and arbitration agreements: Fortress Value v Blue Skye*,
   DLA PIPER INTERNATIONAL ARBITRATION NEWSLETTER (Jun. 26, 2013) ..........................3

## PRELIMINARY STATEMENT

The Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4) (the "PSLRA"), sets forth a clear directive in terms of appointing lead plaintiffs to serve in securities class actions. It instructs courts to appoint as "lead plaintiff" the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u–4(a)(3)(B)(iii)(I). ACDC Investments Limited ("ACDC") is the movant with the largest financial interest in the outcome of the litigation that *also* satisfies Rule 23's typicality and adequacy requirements. Therefore, the Court should grant ACDC's motion and approve it and its chosen counsel as lead plaintiff and lead counsel, respectively.

Courts in this District typically evaluate financial interests using the following four factors: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329, at *11 (D. Md. Feb. 28, 2019). Under these factors, only one other movant has a larger "financial interest" in the litigation than ACDC:

| Movant | Gross Shares | Net Shares | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Skye Capital Partners | 494,250 | 465,250 | $ 11,369,948.00 | $ 6,071,821.31 |
| ACDC Investments Limited | 110,000 | 110,000 | $ 2,079,000.00 | $ 733,379.68 |
| Andrew Sabin and Thomas Plossl | 81,473 | 51,748 | $ 1,246,122.45 | $ 589,194.31 |

| Roney Balson[1] | 215,000 | 5,000 | $ 500,937.00 | $ 185,937.00 |
| Robert and Jeri Steckroth | 10,955 | 7,805 | $ 134,745.24 | $ 44,981.48 |
| Rasik Cauchon-Desai | 2,000 | 0 | GAIN | GAIN |

*See* ECF Nos. 13-5, 14-4, 18-4, 22-4, and 23-3.

Skye Capital Partners, the only movant with a larger financial interest in the litigation than ACDC, does not meet Rule 23's adequacy requirements. This is because Skye Capital Partners has not submitted the requisite "certification" in support of its motion, which is a fatal error under the PSLRA. *See* 15 U.S.C. §78u-4(a)(2)(A) ("Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification . . . ."). Instead, the certification submitted by Skye Capital Partners is signed by an individual without any demonstration that he has "authority . . . to take action on [Skye Capital Partners'] behalf" which, in turn, subjects Skye Capital Partners to "a unique defense that renders [it] 'incapable of adequately representing the class.'" *See In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *6-10 (D.N.J. Mar. 3, 2015). Indeed, Skye Capital Partners' certification is signed by Salvatore Cerchione in his individual capacity and states repeatedly that he, individually, seeks to serve as the lead plaintiff instead of the entity named in the motion.

The absence of a certification is fatal to Skye Capital Partners' motion, especially in light of Mr. Cerchione's checkered past. This includes charges of fraud against Mr. Cerchione accusing him of "design[ing] and implement[ing] a dishonest scheme to reorganise [an investment fund]

---

[1] Mr. Balson stated in his motion papers that he lost approximately $879,028. *See* ECF No. 17 at pp. 5. As discussed below, this figure is substantially inflated due to the fact that it includes losses that are not causally related to the alleged fraud and, therefore, should not have been included in his claimed loss for the purposes of the present motions. Mr. Balson also fails to substantiate his financial interest with regard to his option transaction, as he did not provide the necessary transaction information with his opening motion or in response to counsel's request for it.

2

and its assets, the purpose and effect of which was to diminish or eliminate the rights and interests of the partners of the fund in relation to the assets, to take control and benefit of the assets themselves and to enable them to extract fees and other value from the assets." Elinor Thomas, *Third parties and arbitration agreements: Fortress Value v Blue Skye*, DLA PIPER INTERNATIONAL ARBITRATION NEWSLETTER (Jun. 26, 2013). [2] The claims brought against Mr. Cerchione were "English law tort claims on the basis of, among other things, conspiracy, unlawful interference and dishonest assistance." *Id*. While the deficient certification alone is enough to deny Skye Capital Partners' motion, Mr. Cerchione's past misconduct "implicates [his] ability to serve as a fiduciary" and consequently weighs heavily in favor of disqualifying him or any entity he controls from serving as the lead plaintiff. *See In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at \*22 (S.D. Cal. Dec. 31, 2003).

ACDC is the movant with the next "largest financial interest" in the litigation once Skye Capital Partners is eliminated. With over $730,000 of potentially recoverable losses, ACDC has a strong incentive to vigorously represent the class's claims. These losses are directly attributable to ACDC's purchases of Aurinia Pharmaceuticals stock on the open market and the damages it sustained as a result thereof. Thus, its claims are exactly the same as every other member of the class. If appointed, Mr. Frederic Banjout, who is a successful business owner and investor, will oversee the litigation on behalf of ACDC as its authorized representative. ACDC's evidentiary showing on the motion is sufficient to trigger the PSLRA's presumption of "most adequate plaintiff" to serve as the lead plaintiff and, as demonstrated below, none of the other movants will be able to rebut that presumption. Accordingly, ACDC respectfully requests that its motion be granted in its entirety.

---

[2] *See* Exhibit C to accompanying Supplemental Declaration of Jordan Cafritz ("Supp. Decl.").

3

## ARGUMENT

**I.     THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA.**

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as lead plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). From the movants that file timely motions, the presumptive "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

Importantly, and relevant to the motion at bar, if the movant with the "largest financial interest" either fails to "satisf[y] the requirements of Rule 23" or is otherwise at risk of being "subject to a unique defense[]" such that the presumption of "most adequate plaintiff" is rebutted, then that movant is disqualified and the analysis is performed again beginning with the movant with the next "largest financial interest" in the litigation. *See In re Cavanaugh*, 306 F.3d 726, 727 (9th Cir. 2002) ("The court must examine potential lead plaintiffs one at a time, starting with the

one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

## II. FINANCIAL INTEREST IS MEASURED USING FOUR FACTORS WITH AN EMPHASIS ON RECOVERABLE LOSSES IN THE LITIGATION.

When deciding among competing lead plaintiff movants, the Court must first determine which investor possesses the largest financial interest and then decide whether they have met the adequacy and typicality requirements of Rule 23. 15 U.S.C. §78u-4 (a)(3)(B)(iii)(I)(bb). Courts in this District routinely consider four factors when evaluating a movant's financial interests in the litigation: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *See Palm Tran, Inc. v. Emergent Biosolutions*, No. PWG-21-955, 2021 U.S. Dist. LEXIS 244894, at *12 (D. Md. Dec. 23, 2021).

Using these four factors, the following table provides the financial interests of each movant:

| Movant | Gross Shares | Net Shares | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Skye Capital Partners | 494,250 | 465,250 | $ 11,369,948.00 | $ 6,071,821.31 |
| ACDC Investments Limited | 110,000 | 110,000 | $ 2,079,000.00 | $ 733,379.68 |
| Andrew Sabin and Thomas Plossl | 81,473 | 51,748 | $ 1,246,122.45 | $ 589,194.31 |
| Roney Balson | 215,000 | 5,000 | $ 500,937.00 | $ 185,937.00 |
| Robert and Jeri Steckroth | 10,955 | 7,805 | $ 134,745.24 | $ 44,981.48 |
| Rasik Cauchon-Desai | 2,000 | 0 | GAIN | GAIN |

*See* ECF Nos. 13-5, 14-4, 18-4, 22-4, and 23-3.

ACDC has the largest financial interest in the litigation after Skye Capital Partners. While Mr. Balson may claim otherwise in his motion papers, he is mistaken because ACDC has more net

5

shares, greater net funds expended, and greater recoverable losses. Thus, for three out of the four factors considered by courts within this District, ACDC has a larger financial interest in the litigation than Mr. Balson. Two of these factors, net shares purchased and financial loss, are typically considered to be the most important and are often given the most weight by courts when evaluating a movant's financial interest. *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 376 (E.D. Va. 2003) ("Having considered the number of net shares purchased during the class period coupled with the losses suffered by selling shares during the class period, the Court holds that OTPP has the largest financial interest in the class." (internal quotations and citations omitted)); *see also In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery.").

While Mr. Balson purchased more shares during the Class Period, the purchase of these shares is irrelevant because the majority of the shares were subsequently sold ***intra***-Class Period in transactions unaffected by the alleged fraud, meaning that any losses incurred from those transactions are ***not*** recoverable and do not count towards Mr. Balson's purported financial interest in the litigation. In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005), the Supreme Court held that investors cannot recover under the federal securities laws for economic loss unless the loss was directly caused by or related to the disclosure of the fraud. *Id.* at 344-46 (holding that plaintiffs "must prove proximate causation and economic loss"). Accordingly, where an investor purchases stock at a price inflated by a fraudulent misrepresentation or omission and sells the stock before any disclosure of the fraud (*i.e.*, an "in-and-out" trade), the investor has suffered no loss caused by the fraud even though they may have lost money on their investment. *Dura*, 544 U.S. at 342-343 (when a "purchaser sells the shares

quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

Courts apply *Dura* when evaluating lead plaintiff movants' financial interests in litigation because "it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed." *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *1 (S.D. Cal. Aug. 8, 2011). "[T]he logical outgrowth of [the *Dura*] holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007). In line with the holding in *Dura*, courts have used the amount of potential recovery in the relief sought by the class when determining the "largest financial interest." *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at *9 (S.D. Cal. Oct. 24, 2013) ("This Court focuses on the amount of potential recovery in the relief sought by the class."); *Ruland v. InfoSonics Corp.*, No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144, at *16-17 (S.D. Cal. Oct. 23, 2006) (finding for lead plaintiff purposes the individual with the "largest potential recovery" as the presumptive lead plaintiff); *see also Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) ("when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures"); *In re LightInTheBox Holding Co., Sec. Litig.*, No. 13 Civ. 6016 (PKC), 2013 U.S. Dist. LEXIS 165842, at *10 (S.D.N.Y. Nov. 21, 2013) ("While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint lead counsel."). This methodology connects the share price decline to corrective information and results in loss figures that are recoverable under *Dura*. *See*

7

*In re K-V Pharm. Co. Sec. Litig.*, No. 11CV01816 AGF, 2012 U.S. Dist. LEXIS 62161, at *11 (E.D. Mo. May 3, 2012) ("[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.") (quoting *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *14).

Thus, when applying *Dura* and disregarding any losses attributable to "in-and-out" trades (*i.e.*, trades resulting in losses that were not caused by the alleged fraud), Mr. Balson's ***recoverable*** loss in the action is approximately $185,937. *See* Supp. Decl., Exhibit A (spreadsheet identifying non-causally related losses and calculating Mr. Balson's recoverable loss). As a result, ACDC has the second largest financial interest in the relief sought among the competing movants (next to Skye Capital Partners). *See Marjanian v. Allied Nev. Gold Corp.*, No. 3:14-cv-0175-LRH-WGC, 2014 U.S. Dist. LEXIS 203290, at *17 (D. Nev. Nov. 7, 2014) ("This figure includes sales of the stock that occurred . . . before Allied Nevada revealed their misrepresentations . . . . Including these sales in the calculation of total losses risks what *Dura* sought to prevent: loss figures that take into account not just losses caused by the fraud, but also 'changed economic circumstances, changed investor expectations, new industry-specific or firm specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.'") (citations omitted).[3]

---

[3] Mr. Balson's approximate recoverable loss does not account for any losses relating to his option transactions, given that the underlying transaction information necessary to evaluate Mr. Balson's losses was not provided with his opening motion papers. *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998) (rejecting lead plaintiff motions of two movants who failed to adequately report their financial interest in the action); *Nager v. Websecure, Inc.,* Nos. 97-10662-GAO; 97-10828-GAO; 97-10829-GAO; 97-11045-GAO; 97-11110-GAO, 1997 U.S. Dist. LEXIS 19601, at *3 (D. Mass. Nov. 26, 1997) (rejecting member of a group that was appointed as lead plaintiff for failure to accurately report one of his transactions in the subject security). Additionally, Mr. Balson's counsel failed to provide the underlying option transaction information when requested. *See* Supp. Decl., Exhibit B (letter to Mr. Balson's counsel and liaison counsel

**III.    ACDC IS THE MOST ADEQUATE PLAINTIFF BECAUSE IT HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION THAT ALSO MEETS THE RULE 23 REQUIREMENTS.**

Although Skye Capital Partners has a larger loss, it fails to meet the Rule 23 requirements because it is also subject to a significant "unique defense." It did not submit the statutorily required certification; instead, its motion is accompanied by a certification completed by Salvatore Cerchione in his individual capacity and without any indication that he is authorized to act on behalf of Skye Capital Partners. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538 (S.D.N.Y. 2015) ("Some courts have rejected lead plaintiff applications on the ground that the relevant PSLRA certification lacks any indication that its signatory had the requisite authority."); *see also Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, No. 11-6247 (JBS/KMW), 2012 U.S. Dist. LEXIS 118693, at *34-36 (D.N.J. Aug. 22, 2012) (rejecting a movant's application because its certification did not specify that it was executed on behalf of the signatory's subsidiaries); *In re Enzymotec Ltd. Sec. Litig.*, 2015 U.S. Dist. LEXIS 25720, at *6-10 (holding that the presumption in favor of lead plaintiff movant 3B Communications was "successfully rebutted" where 3B was subject to a unique defense because its certification "provide[d] no indication that its signer . . . is authorized to sign the certification on 3B's behalf.").

Skye Capital Partner's Certification was signed by Mr. Cerchione in his individual capacity, and not on behalf of Sky Capital Partners. *See* ECF No. 22-3. The Certification states that Mr. Cerchione is the "trustee and beneficial owner of Skye Capital Partners, a trust owning

---

requesting underlying transaction information for purposes of evaluating financial interest). Crediting Mr. Balson's supposed option losses of $375,105 (ECF No. 17 at 5) would, at most, increase his recoverable loss to $561,042, which is still less than ACDC's recoverable loss.

9

shares of Aurinia Pharmaceuticals Inc." *Id.* at ¶1. However, Mr. Cerchione does not state that he is authorized to act on behalf of Skye Capital Partners and otherwise fails to provide any supporting documentation to prove he has authority to act on behalf of Skye Capital Partners.[4] Furthermore, the language in the Certification speaks on behalf of Mr. Cerchione, rather than Skye Capital Partners, stating that, 1) "***I*** have reviewed the complaint, and have authorized its filing and/or the filing of a Lead Plaintiff motion on ***my*** behalf." (*Id.* at ¶2), 2) "***I*** want to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial. I fully understand the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the class." (*Id.* at ¶4), and 3) "Attached hereto as Schedule A is a complete listing of all ***my*** Aurinia Pharmaceuticals, Inc. (NASDAQ: AUPH) transactions during the Class Period." (*Id.* at ¶5) (emphasis added). Each time the Certification makes a representation, it appears to be on behalf of Mr. Cerchione and not the entity moving for Lead Plaintiff, which is listed as Skye Capital Partners.

Courts have held that the failure to evidence one's authority to file a motion for appointment as lead plaintiff is a ground for denying the application. *See, e.g., Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002) (investment advisor's motion denied because it failed to submit "any evidence that it received permission to move on its clients' behalf."); *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002) (same). The *Enzymotec* case is informative. In that case, movant 3B Communications ("3B") possessed the largest financial interest in the outcome of the litigation. However, movant

---

[4] In fact, Skye Capital Partners does not appear to be a "trust" or the correct name of the entity affiliated with Mr. Cerchione, which is Blue Skye Capital Partners S.a.r.l. registered in Luxembourg.

Enzymotec Investor Group ("EIG") argued that 3B was not the presumptively most adequate lead plaintiff and 3B was subject to unique defenses because, "(1) 3B failed to file a proper certification in accordance with 15 U.S.C. §78u-4(a)(2)(A); and (2) the alleged connection of 3B's directors to a criminal enterprise in Panama raises additional concerns regarding 3B's adequacy as lead plaintiff." *See In re Enzymotec Ltd. Sec. Litig.*, 2015 U.S. Dist. LEXIS 25720, at *3. The Court looked to *Steamfitters* for guidance, and found that the reasoning in *Steamfitters* equally applied to the *Enzymotec* case. The *Enzymotec* Court found that, "3B's certification could be subject to attack because it provides no indication that its signer, Ami Baksis, is authorized to sign the certification on 3B's behalf." *See id*. at *8. Due to this reasoning, the Court found that EIG had successfully rebutted the presumption in favor of 3B as lead plaintiff. The Court found that EIG would adequately represent the class, and EIG was appointed lead plaintiff. The facts at hand are no different than the facts in the *Enzymotec* case. Here, Mr. Cerchione signed the PSLRA certification without providing any evidence regarding his authority to represent Skye Capital Partners in this action. Therefore, this Court should rule in the same way.

The certification also does "not establish that [Skye Capital Partners] alone [is] willing to serve as a representative part[y]." *Steamfitters*, 2012 U.S. Dist. LEXIS 118693, at *35. In *Steamfitters*, a group of nine related investment entities sought to be appointed as lead plaintiff but only half or so of the entities had ownership interests in the securities at issue, meaning that only half of the entities had standing to pursue the claims alleged. The court held that the certification submitted in support of the lead plaintiff motion did not specify that these entities, alone, were willing to serve as the lead plaintiff. *Id*. at *35-36. The certification also failed to make the other necessary representations on behalf of the proper entities. *Id*. at *36. In sum, the court disqualified the lead plaintiff movant because, as explained, "the Court's inquiry here is whether the

11

Subsidiaries would be subject to unique defenses. The PSLRA has specific requirements for lead plaintiff certifications, and the Court finds that there is substantial likelihood that the Subsidiaries would be subject to a unique defense regarding invalid or lack of certification because the validity of their purported certification is fairly debatable." *Id.*; *see also Nasin v. Hongli Clean Energy Techs. Corp.*, No. 2:17-3244 (WJM), 2017 U.S. Dist. LEXIS 192673, at *8-9 (D.N.J. Nov. 21, 2017) (disqualifying movant for failing to include "required language in its initial certification" and correcting certification only after statutory "60-day deadline").

In addition to the deficient certification, Mr. Cerchione's involvement in the litigation creates a separate host of problems arising from his alleged past fraudulent conduct. In 2012, Mr. Cerchione was involved in litigation in England. Mr. Cerchione was one of the managers of an investment structure, Blue Skye Fund, the underlying assets of which were businesses in Italy which had an approximate value of €200M. *See* [2013] EWCA Civ 367 at ¶3.[5] Mr. Cerchione was accused of, "acting in concert with the other defendants […] as managers of the Blue Skye Fund, designed and implemented a dishonest scheme to reorganise the fund and its assets, the purpose and effect of which was to diminish or eliminate the claimants' rights and interests in relation to the assets, to take the control and benefit of the assets for themselves, and to enable them and their associated entities to extract fees and other value from the assets without reference to or oversight from the claimants." *See* [2012] EWHC 1486 (Comm) at ¶12.[6] At trial, evidence presented showed that Mr. Cerchione and his partner, Gianluca D'Avanzo, orchestrated a scheme whereby they were allowed to "take control of [the investment fund] and benefit themselves." Chloe Beresford, *Who's*

---

[5] Supp. Decl., Exhibit E.

[6] Supp. Decl., Exhibit D.

*Blue Skye? What You Need To Know About The Firm Behind The Elliot-AC Milan Deal*, FORBES (Sept. 25, 2020).[7]

Mr. Cerchione's past strikes against his adequacy to serve as lead plaintiff, given that his actions "implicate[] [his] ability to serve as a fiduciary." *In re Surebeam Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25022, at *21-22 (rejecting lead plaintiff movant "[w]ithout comment or consideration of Mr. Brown's guilt or innocence" because there was "at least a potential that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class"). Class actions "requir[e] careful judicial supervision, because the fate of the class members is to a considerable extent in the hands of a single plaintiff . . . whom the other members of the class may not know and who may not be able or willing to be an adequate fiduciary of their interests." *Culver v. City of Milwaukee*, 277 F.3d 908, 910 (7th Cir. 2002). Thus, "Rule 23 contemplates, and the district court should insist on, a conscientious representative plaintiff." *Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir. 1991). "Whether a party would adequately protect the interests of the class is a question of fact depending on the circumstances of each case." *Susman v. Lincoln Am. Corp.,* 561 F.2d 86, 90 (7th Cir. 1977). "Integrity and credibility are appropriate characteristics to examine when determining if an individual would make an adequate representative because a lead plaintiff will act as a fiduciary for his absent cohorts." *Howard v. Ray's LLC*, No. 1:08-cv-627-RLY-MJD, 2011 U.S. Dist. LEXIS 113591, at *14 (S.D. Ind. 2011). "The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Searcy v. eFunds Corp.,* No. 08-C-985, 2010 U.S. Dist. LEXIS 31627, at *15 (N.D. Ill. Mar. 31, 2010).

---

[7] Supp. Decl., Exhibit F.

13

Similarly, where a potential lead plaintiff appears "subject to" a unique defense, he or she is ineligible to represent the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). This is because the "unique defense" will take "time and attention" away from the issues common to the class and "distract" the focus of the litigation. *See In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530, 04 C 3634, 04 C 3713, 04 C 3783, 04 C 3844, 04 C 3864, 04 C 3936, 04 C 4342, 04 C 4697, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005) (disqualifying in-and-out trader where defense was likely to be raised even if unsuccessfully in the end); *see also Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 U.S. Dist. LEXIS 106246, at *15 (N.D. Ill. July 30, 2013) (holding "unique defense" existed where retirement fund "may" face motion to dismiss based on lack of standing); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316-17 (E.D. Va. 2007) ("[P]laintiff is inadequate because he has not demonstrated the requisite credibility to ensure that he will act as an appropriate fiduciary. As noted, [a]s a fiduciary for the class, [plaintiff class representative] . . . [is] required to adhere to the highest standards of honesty and integrity. Thus, to be appointed class representative, a plaintiff must demonstrate that he exhibits honesty, conscientiousness, and other affirmative personal qualities." (internal citations and quotations omitted)); *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 87 (E.D.N.C. 2009) ("Several factors bear on the court's assessment of the proposed representative. The court may consider his honesty, conscientiousness, and other affirmative personal qualities." (internal quotations omitted)).

Mr. Cerchione's past alleged fraudulent conduct further undermines Skye Capital Partners' motion for lead plaintiff. While the deficiency of its certification is reason alone to deny its motion, Mr. Cerchione's apparent intent to insert himself in this case weighs heavily in favor of disqualifying Skye Capital Partners and avoiding whatever risk would be created by allowing Mr. Cerchione to participate as a lead plaintiff, either directly or indirectly.

**IV.     THE COURT SHOULD APPOINT ACDC AS THE LEAD PLAINTIFF.**

As demonstrated above, ACDC has the largest financial interest once Skye Capital Partners is disqualified. ACDC satisfies the typicality and adequacy requirements. The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). ACDC claims are typical of those of other Class members because, like other Class members, it purchased Aurinia securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the Action. *See* Memorandum in Support of Motion, *See* ECF No. 14-1. Moreover, ACDC's claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Kuriakose v. Fed. Home Loan Mortg. Co.,* No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506, at *13-14 (S.D.N.Y. Nov. 24, 2008).

To satisfy the adequacy requirement at this stage of the proceedings, ACDC must make a preliminary showing that "(1) [its choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) [it has] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 131 (S.D.N.Y. 2011). ACDC has shown that its choice of counsel, Levi & Korsinsky, LLP, is qualified, experienced, and able to conduct the litigation. *See* ECF. No. 14-7 (Levi & Korsinsky firm resume). This will ensure the vigorous and adequate prosecution of the Class's claims. *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,* 269 F.R.D. 291, 297 (S.D.N.Y. 2010). In addition, ACDC has no conflicts with other Class Members. ECF No. 14-1 at pp. 7-8; *Reitan v. China Mobile Games & Ent. Group, Ltd.,* 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014). Moreover, not only is there no evidence

15

of any antagonism between ACDC's interests and those of the Class, but ACDC has a significant and compelling interest in prosecuting the Action based on the large financial losses it has suffered as a result of the wrongful conduct alleged in the Action. *Burnham v. Qutoutiao Inc.,* No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752, at \*6-7 (S.D.N.Y. Nov. 4, 2020).

Finally, ACDC has further demonstrated its adequacy by submitting a declaration in support of its Motion executed by its attorney-in-fact for the litigation, Federic Banjout, attesting that he is a sophisticated investor by providing his education, employment, and years of investing experience. ECF No. 14-6. Banjout resides in Paris, France, where he is semi-retired after owning and managing a shoe company for approximately 20 years. *Id.* at ¶3. His company, Eden Shoes, at one time had 60 stores and 130 employees. *Id.* at ¶3. He currently works for himself by investing in securities and real estate. *Id.* at ¶3. He has been investing in securities for approximately the last 10 years. *Id.* at ¶3. ACDC is an investment holding company for members of Banjout's family. *Id.* at ¶2. On behalf of ACDC, Banjout purchased the Aurinia stock at issue in this lawsuit. *Id.* at ¶2. Further, in his certification and declaration, Banjout states his familiarity with, and willingness to take on, the duties of a lead plaintiff and class representative under the PSLRA and Rule 23. *See* ECF Nos. 14-3 and 14-6 (PSLRA Certification & Declaration). Importantly, Banjout establishes without question that he is authorized to act on behalf of ACDC by attaching a true and correct copy of his Special Power of Attorney with the apostille stamp. *See* ECF No. 14-6 at pp. 4-5.

ACDC, therefore, is the movant for lead plaintiff that has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Accordingly, ACDC is entitled to the presumption that it is the "most adequate plaintiff" and that it should be appointed as the lead plaintiff. 15 U.S.C §78u-4(a)(3)(B)(iii)(II). Once the presumption is triggered, the Court must focus on the presumptive lead plaintiff alone. *See Kasilingam v. Tilray, Inc.,* 1:20-CV-03459-PAC,

16

2020 U.S. Dist. LEXIS 140885, at *5-6 (S.D.N.Y. Aug. 6, 2020); *Sofran v. Labranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (citing *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). This presumption may be rebutted only upon ***proof*** by a class member that it "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C §78u-4(a)(3)(B)(iii)(II); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) (internal quotation and citation omitted); *see also Omdahl v. Farfetch Ltd.,* No. 19-CV-8657 (AJN), 2020 U.S. Dist. LEXIS 103935, at *6 (S.D.N.Y. June 10, 2020) ("[t]his presumption may only be rebutted by proof that the purportedly most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'"); *Jiehua Huang v. Airmedia Grp., Inc.,* No. 1:15-CV-4966 (ALC), 2015 U.S. Dist. LEXIS 178083, at *6-7 (S.D.N.Y. Nov. 10, 2015) ("'speculative and hypothetical' allegations should not prevent the appointment of a lead plaintiff"). This the other movants have not, and cannot, do.

## CONCLUSION

For the reasons set forth above and in the opening motion papers, ACDC respectfully requests that this Court: (1) appoint it as Lead Plaintiff for the Class in the Action; and (2) approve Levi & Korsinsky LLP as Lead Counsel for the Class.

Dated: June 28, 2022                              Respectfully Submitted,


                                                  **LEVI & KORSINSKY, LLP**


                                                  By: */s/ Jordan A. Cafritz*
                                                  Jordan A. Cafritz (Bar #:20908)
                                                  1101 30th Street NW, Suite 115
                                                  Washington, D.C. 20007

17

Tel: (202) 774-5795
Fax: (212) 363-7171
Email: jcafritz@zlk.com

Adam M. Apton (*pro hac vice* forthcoming)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for ACDC Investments Limited and [Proposed] Lead Counsel for the Class*

18

## <u>CERTIFICATE OF SERVICE</u>

I, Jordan A. Cafritz, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 28 day of June 2022.

*/s/ Jordan A. Cafritz*
Jordan A. Cafritz