# EXHIBIT E



# England and Wales Court of Appeal (Civil Division) Decisions

---

**You are here:** BAILII >> Databases >> England and Wales Court of Appeal (Civil Division) Decisions >> Fortress Value Recovery Fund I LLC v Blue Skye Special Opportunities Fund LP & Ors [2013] EWCA Civ 367 (17 April 2013)
URL: *http://www.bailii.org/ew/cases/EWCA/Civ/2013/367.html*
Cite as: [2013] WLR 3466, [2013] 1 WLR 3466, [2013] WLR(D) 154, [2013] 1 CLC 752, [2013] 1 Lloyd's Rep 606, [2013] 2 All ER (Comm) 315, [2013] EWCA Civ 367

---

[New search] [Printable RTF version] [Buy ICLR report: [2013] 1 WLR 3466] [View ICLR summary: [2013] WLR(D) 154] [Help]

---

**Neutral Citation Number: [2013] EWCA Civ 367**

Case No: A3/2012/1512

**IN THE COURT OF APPEAL (CIVIL DIVISION)**
**ON APPEAL FROM THE HIGH COURT OF JUSTICE**
**COMMERCIAL COURT**
**Mr Justice Blair**
[2012] EWHC 1486 (Comm)

Royal Courts of Justice
Strand, London, WC2A 2LL

17/04/2013

B e f o r e :

**LORD JUSTICE PILL**
**LORD JUSTICE TOULSON**
**and**
**LORD JUSTICE TOMLINSON**

_____

Between:

**(1) Fortress Value Recovery Fund I LLC**
**(2) ZBS Capital Partners LP**
**(3) Cypress Way European Asset Investors II SARL**            **Respondents**
**- and -**
**(1) Blue Skye Special Opportunities Fund LP**
**(2) Mr Salvatore Cerchione**
**(3) Mr Gianluca D'Avanzo**
**(4) Stepstone Acquisition SARL**
**(5) Blue Skye GP Ltd**
**(6) DBZ Investment (Lux) SARL (Formerly Blue Skye**

(Lux) SARL)
(7)Benlomond Corporation SARL
(8) Blue Skye Management SARL
(9) Blue Skye Capital SARL
(10) Blue Skye Management SARL SCS
(11) Greentea SA
(12) Blue Skye Financial Holdings SARL
(13) Omega Skye Partners Limited Partnership          **Appellants**
(14) Omega Partners SARL
(15) Mr Mattia Mirko Danese
(16) Mr Francesco Paolo Padula
(17) Mr Giovanni Caslini
(18) BSkye Investors SARL

_____

**Ewan McQuater QC and David Quest (instructed by Slaughter and May) for the Respondents**
**Hearing date : 31 January 2013**

_____

**HTML VERSION OF JUDGMENT**

_____

Crown Copyright ©

**Lord Justice Tomlinson :**

*Introduction*

1. Section 8 of the Contracts (Rights of Third Parties) Act 1999, hereinafter "the 1999 Act", concerns the circumstances in which a third party shall be treated as a party to an arbitration agreement contained in a contract to which the third party is not a party. It has an unusual legislative history. When in 1996 the Law Commission proposed a reform to the rule of privity of contract, it recommended that arbitration agreements and jurisdiction agreements should fall outside the scope of the proposed reform. It pointed out that its proposed reform was concerned only with the conferring of rights and benefits on third parties and not with the imposition of duties, whereas an arbitration or jurisdiction agreement cannot operate satisfactorily unless any entitlement of the third party to submit to arbitration, or to comply with the jurisdiction agreement, carries with it also a duty on the third party to submit to arbitration or to comply with the jurisdiction agreement, as the case may be. The Commission foresaw grave difficulties in approaching an arbitration agreement on the basis that it could be regarded as conferring a procedural benefit on a third party and that it could also constitute a procedural condition on the third party's right to enforce the substantive promise contained in the contract in which the arbitration agreement appears – see Privity of Contract: Contracts for the Benefit of Third Parties, Law Com No 242 (1996), at paragraph 14.14-14.16. The text of the bill introduced to Parliament in the House of Lords contained no provision dealing expressly with arbitration. Section 8 was introduced by way of Government amendment at the Report Stage in the House of Commons – see per Colman J in *Nisshin Shipping Co Ltd v Cleaves & Co Ltd* [2004] 1 Lloyd's Law Reports 38 at 44, who in turn derived his information from an article by Professor Andrew Burrows, a member of the Law Commission responsible for the original recommendation. This case demonstrates that the Commission's fears were not unfounded.

*The dispute in outline*

2. There are three claimants and eighteen defendants in this litigation, although this appeal is immediately concerned with only one claimant and two defendants. The circumstances of the underlying dispute are succinctly summarised in the judgment of Blair J below, [2012] EWHC 1486 (Comm), and I also borrow gratefully from the parties' summary of what is relevant for present purposes.

3. The Appellants, Mr Cerchione and Mr D'Avanzo, are the managers of an investment structure, the underlying assets of which are businesses in Italy which are said to have a value in the region of €200M.

4. The investment structure is based around an English limited partnership regulated by a Deed of Limited Partnership dated 24 December 2008. The partnership is called the Blue Skye Fund. There is one general partner, Blue Skye GP Limited, and three limited partners. The principal limited partner is Stepstone Acquisition SARL, hereinafter "Stepstone". The other two limited partners are Omega Partners and Omega Skye Partners SARL, LP. The four partners are the four parties to the Deed of Limited Partnership in respect of the Blue Skye Special Opportunities Fund Limited Partnership, to which I have already referred as the "Blue Skye Fund".

5. Stepstone has assigned its interest in the Blue Skye Fund, together with certain related rights, to the Respondent, Fortress Value Recovery Fund I LLC, hereinafter "Fortress", as security for a loan made to Stepstone by ZBS Capital Partners LP, hereinafter "ZBS".

6. The underlying claim to which this appeal relates is a claim brought by Fortress as assignee of Stepstone against the Appellants. It is the case of Fortress that in the course of 2011 the Appellants, as managers of the Blue Skye Fund, acting in concert with three other individuals and twelve corporate entities, including Blue Skye GP Limited, designed and implemented a dishonest scheme to reorganise the fund and its assets, the purpose and effect of which was to diminish or to eliminate the rights and interests of Stepstone and others in relation to the assets, to take the control and benefit of the assets themselves, and to enable them and their associated entities to extract fees and other value from the assets without reference to or oversight from Stepstone, Fortress, ZBS and another investor in Stepstone.

7. The claim brought by Fortress as assignee of Stepstone against the Appellants is formulated in tort, including claims in conspiracy, unlawful interference, procuring a breach of the Blue Skye Fund Partnership Deed and dishonest assistance. These are all English law claims. There is also a claim alleging the causing of damage by intentional, alternatively by negligent, conduct, or by imprudence, all of which are said to be actionable under the law of Luxembourg.

8. There are as I have already indicated many other claims made in the Action, including claims by Fortress in right of Stepstone against Blue Skye GP Limited, the General Partner, and the two other limited partners, Omega Partners and Omega Skye Partners. I shall call these claims brought by Fortress as assignee of Stepstone against the Appellants, Blue Skye GP Limited, Omega Partners and Omega Skye Partners "the Stepstone claims".

9. The Deed of Limited Partnership contains an arbitration clause in the following form:-

> "17.11 **Governing Law**
>
> This Agreement and the rights, obligations and relationships of the parties hereto under this Agreement shall be governed by and construed in accordance with the laws of England and Wales. Any dispute, controversy or claim arising out of or in connection with this Agreement or the formation, breach, termination of invalidity thereof, that the parties hereto are unable to resolve between themselves, shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce of Paris by three arbitrators appointed in accordance with the aforementioned rules. The place of arbitration shall be London, UK. All submissions and awards in relation to arbitration under this Agreement shall be in English, and all arbitration proceedings and pleadings shall be in English."

10. One of many applications which came before Blair J in April 2012 was an application by the Appellants, Blue Skye GP, Omega Partners and Omega Skye Partners to stay the Stepstone claims in reliance upon the arbitration clause.

11. Section 9 of the Arbitration Act 1996 provides, so far as relevant, as follows:-

> **"Stay of legal proceedings**
>
> (1) A party to an arbitration agreement against whom legal proceedings are brought (whether by way of claim or counterclaim) in respect of a matter which under the agreement is to be referred to arbitration may (upon notice to the other parties to the proceedings) apply to the court in which the proceedings have been brought to stay the proceedings so far as they concern that matter.
>
> (2) An application may be made notwithstanding that the matter is to be referred to arbitration only after the exhaustion of other dispute resolution procedures.
>
> (3) An application may not be made by a person before taking the appropriate procedural step (if any) to acknowledge the legal proceedings against him or after he has taken any step in those proceedings to answer the substantive claim.
>
> (4) On an application under this section the court shall grant a stay unless satisfied that the arbitration agreement is null and void, inoperative, or incapable of being performed.
>
> . . ."

12. The Application Notice before Blair J sought in the alternative a stay pursuant to the inherent jurisdiction of the court, but that seems not to have been considered by the judge and was not pursued before us. For reasons which will become apparent that alternative application could not in any event succeed if the primary application under the Arbitration Act 1996 fails.

13. Unsurprisingly it was conceded that s.9 of the Arbitration Act 1996 mandated a stay of the Stepstone claim against Blue Skye GP. The stay in favour of the limited partners was opposed on the basis that the Stepstone claim against them relates not to the Blue Skye Fund and to the participation of the limited partners in it but rather that the complaint against Omega Partners and Omega Skye Partners relates to their separate role as shareholders in Stepstone. Thus the argument on behalf of Fortress deployed before the judge was that the Stepstone claims against Omega Partners and Omega Skye Partners did not arise out of or in connection with the Partnership Deed. The limited partners for their part contended that the distinction between the roles of Omega Partners and Omega Skye Partners as shareholders in Stepstone and their roles as partners pursuant to the Partnership Deed was artificial. The claims, including the claim for procuring a breach of the Partnership Deed and also the other claims relating to the restructuring were, they said, claims brought in connection with the Partnership Deed. The case brought against Omega Partners and Omega Skye Partners was that they acted unlawfully in terminating the partnership constituted by the Partnership Deed and transferring assets from the Blue Skye Fund to Blue Skye SCS, another of the Defendants to the Action. The claim therefore arose also in connection with the termination of the Partnership Deed.

14. Blair J accepted the contentions of Omega Partners and Omega Skye Partners. At paragraph 80 of his judgment he said this:-

> ". . . A wide construction of the arbitration clause is mandated by *Fiona Trust & Holdings Corp v Privalov* [2007] UKHL 40 at [12] and [13]. Whether for the purposes of the dispute Omega Skye and Omega Partners are viewed as shareholders in Stepstone, or as partners, I am satisfied that the claims in question are claims "arising out of or in connection with" the Partnership Deed, or "the formation, breach, termination or invalidity" of the agreement. On

that basis, the claims against Omega Skye and Omega Partners (the thirteenth and fourteenth defendants), should be stayed in accordance with paragraphs 3 – 4 of the Draft Order attached to the application."

15. The Stepstone claims against the Appellants were accepted before Blair J to be broadly the same in nature as those brought against Omega Partners and Omega Skye Partners. The Appellants are not however parties to the Partnership Deed. They contended nonetheless before the judge that they too are entitled to rely upon the arbitration clause. That entitlement is said to derive from the circumstance that the Partnership Deed on its true construction provides such an entitlement to the Appellants, notwithstanding they are not parties thereto, and that the 1999 Act renders such provision effective. I turn then to the relevant contractual and statutory provisions. It is convenient first to set out the relevant provisions of the 1999 Act.

*The Contracts (Rights of Third Parties) Act 1999*

16. The Act provides:-

**1. Right of third party to enforce contractual term**.

This section has no associated Explanatory Notes

(1) Subject to the provisions of this Act, a person who is not a party to a contract (a "third party") may in his own right enforce a term of the contract if -

(a) the contract expressly provides that he may, or

(b) subject to subsection (2), the term purports to confer a benefit on him.

(2) Subsection (1)(b) does not apply if on a proper construction of the contract it appears that the parties did not intend the term to be enforceable by the third party.

. . .

(4) This section does not confer a right on a third party to enforce a term of a contract otherwise than subject to and in accordance with any other relevant terms of the contract."

The meaning of "enforce", in the context of an exclusion clause or limitation on liability, is set out in s.1(6)

(6) Where a term of a contract excludes or limits liability in relation to any matter references in this Act to the third party enforcing the term shall be construed as references to his availing himself of the exclusion or limitation.

17. Section 8 deals with arbitration:-

This section has no associated Explanatory Notes

(1) Where -

(a) a right under section 1 to enforce a term ("the substantive term") is subject to a term providing for the submission of disputes to arbitration ("the arbitration agreement"), and

(b) the arbitration agreement is an agreement in writing for the purposes of Part I of the Arbitration Act 1996,

the third party shall be treated for the purposes of that Act as a party to the arbitration agreement as regards disputes between himself and the promisor relating to the enforcement of the substantive term by the third party.

(2) Where -

(a) a third party has a right under section 1 to enforce a term providing for one or more descriptions of dispute between the third party and the promisor to be submitted to arbitration ("the arbitration agreement"),

(b) the arbitration agreement is an agreement in writing for the purposes of Part I of the Arbitration Act 1996, and

(c) the third party does not fall to be treated under subsection (1) as a party to the arbitration agreement,

the third party shall, if he exercises the right, be treated for the purposes of that Act as a party to the arbitration agreement in relation to the matter with respect to which the right is exercised, and be treated as having been so immediately before the exercise of the right.

### *The Partnership Deed*

18. The Appellants are not parties to the Partnership Deed, but the terms of the Partnership Deed purport to confer substantial rights upon them and expressly provide for their involvement in the operation of the Blue Skye Fund. In particular, the Appellants are identified by name in Clause 1.1 of the Partnership Deed, which states that they are "Key Managers".

19. The Appellants are also "Associates" of Blue Skye GP. The term "Associate" is defined in Clause 1.1 of the Deed as meaning:

"any person which in relation to the person concerned is . . . (e) any person, body corporate, partnership or other unincorporated body who exercises day to day control over the person concerned or over the ultimate direct or indirect holding entity (or entity which ultimately controls, directly or indirectly) of the person concerned . . ."

The references to "control" must be read against Clause 1.7, which states that:-

"The term "controlled by" shall mean the possession, directly or indirectly, of the power to direct or procure the direction of the management and policies of the person, whether through the ownership of shares, by contract or otherwise."

It is for present purposes common ground that the Appellants owned and controlled Blue Skye GP and that they are therefore to be regarded as Associates of Blue Skye GP.

20. Clause 17.2 of the Partnership Deed, under the rubric "Exculpation and Indemnities", extends or purports to extend to Blue Skye GP and to its Associates substantial exclusions from and indemnities in respect of liability to the Partnership or the Partners, including therefore Stepstone. It provides:-

"17.2.1 Neither the General Partner nor any of its Associates shall have any liability for any loss to the Partnership or the Partners arising in connection with the services to be performed hereunder or pursuant hereto, or under or pursuant to any management agreement, advisory agreement or other agreement under which it provides or agrees to provide services to or in respect of the Partnership or which otherwise arises in relation to the operation, business or activities of the Partnership save in respect of any matter resulting from its fraud, wilful misconduct, bad faith or reckless disregard for its obligations and duties in relation to the

Partnership or its gross negligence or breach of any law, regulation or material term of this Agreement.

17.2.2 The Partnership agrees to indemnify and hold harmless out of Partnership Assets the General Partner and any Associate (the "Indemnified Party") against any and all liabilities, actions, proceedings, claims, costs, demands, damages and expenses (including legal fees) incurred or threatened by reason of the Indemnified Party being or having acted as a general partner or manager in respect of the Partnership or arising in respect of or in connection with any matter or other circumstance relating to or resulting from the exercise of its powers as a general partner or manager or from the provision of services to or in respect of the Partnership or which otherwise arise in relation to the operation, business or activities of the partnership provided however that it shall not be so indemnified with respect to any matter resulting from its fraud, gross negligence, wilful misconduct, bad faith, reckless disregard for its obligations and duties in relation to the Partnership or breach of any law, regulation or material term of this Agreement or, in the case of the General Partner, from any material breach of any provision of FSMA binding upon it."

21. For good measure, although it here I think adds nothing to the argument, Clause 17.2.3 extends equivalent exclusions and indemnities to any officer or director of the General Partner, and the First Appellant was until 26 October 2011 also an Officer/Director of Blue Skye GP.

22. Finally, the Partnership Deed makes express reference to the 1999 Act, as follows:-

"17.14 **Contracts (Rights of Third Parties) Act 1999**

(a) Any person (other than the Parties to this agreement) who is given any rights or benefits under this agreement (including pursuant to Clause 17.2 and the definition of "Independent Valuer") shall be entitled to enforce those rights or benefits against the parties in accordance with the Contracts (Rights of Third Parties) Act 1999.

(b) Save as otherwise provided in Clause 17.14(a) above, the operation of the Contracts (Rights of Third Parties) Act 1999 is hereby excluded."

### *The application for a stay*

23. The Appellants' application for a stay was supported by a witness statement of their solicitor, Thomas Hibbert. At paragraph 28 of his witness statement he asserted that the Appellants are entitled to avail themselves of Clauses 17.2.1. 17.2.2 and 17.2.3. It is at the least clearly arguable that Clause 17.14, or perhaps more accurately the 1999 Act to which it refers, is effective to confer upon the Appellants the benefit of the exclusion of liability provided by Clause 17.2.1 insofar as the Stepstone claim is formulated in terms falling short of gross negligence. I leave out of account for present purposes whether the negligence and/or imprudence alleged against the Appellants may in due course be determined to constitute a "breach of any law, regulation or material term of" the Partnership Deed and so be conduct which disentitles the Appellants from reliance upon the exclusion of liability. Although it may add nothing to the analysis in this case, it is equally clearly arguable that the Stepstone claim is, insofar as it is brought in negligence or imprudence, capable of generating in the Appellants a right to indemnity in terms of Clause 17.2.2. Clause 17.2.2 is to this extent the mirror image of Clause 17.2.1 and there would in the present case be no occasion to resort to it to the extent that the Appellants resist liability to Fortress in right of Stepstone by reliance on Clause 17.2.1. No doubt Clause 17.2.2 is primarily concerned with claims brought by persons other than the partners, but it is important in the wider context to note that it can avail the Appellants in circumstances where they are found liable for conduct within the scope of the indemnity.

24. Fortress accepts that were the Appellants to wish to enforce the indemnity afforded them by Clause 17.2.2, their right so to do would, in terms of s.8(1)(a) of the 1999 Act, be subject to a term providing for the

submission of disputes to arbitration, i.e. Clause 17.11. This much is, I think, clear. It follows that an action brought by the Appellants to enforce the indemnity against one or more of the partners could, on the partners' application, be stayed pursuant to s.9 of the Arbitration Act. It also follows that were the Appellants to commence an arbitration against the partners for the purpose of enforcing the indemnity, the partners would not be able successfully to challenge the jurisdiction of the arbitral tribunal to issue a binding award. The position in this regard is no different from that which obtained in *Nisshin Shipping Co Ltd v Cleaves,* above. There chartering brokers, Cleaves, negotiated nine time charters on behalf of the shipowners Nisshin. The charterparties provided for the payment by owners of commission of 2% for equal division to the charterers and to Cleaves on hire earned and paid under the charters. Each charter incorporated an arbitration clause containing wording referring to disputes between the parties to the charterparty or between owners and charterers, but the wording was in each case wide enough to cover a claim by charterers against the owners for failure by the owners to perform their promise to pay commission to Cleaves. Cleaves sought payment of their commission from the owners who refused to pay, alleging that Cleaves were in repudiatory breach of the agency relationship. Cleaves accordingly commenced arbitration against the owners seeking their commission. The arbitrators concluded that they had jurisdiction to entertain the claim for commission by Cleaves against the owners and Colman J upheld their conclusion. Colman J reasoned as follows:-

> "40. The promise under these charterparties to pay commission to the brokers was clearly a promise made to and enforceable by the charterers. Failure to perform that obligation would clearly fall within the scope of all the arbitration clauses. If the charterers had assigned their cause of action for failure to pay commission to the brokers by a statutory assignment the latter could only have enforced that promise if they resorted to arbitration against the owners. Had they done so, it would not have been open to the owners to challenge the arbitrators' jurisdiction on the grounds that the only parties to the arbitration agreement who were identified by it were the owners and the charterers. That would be because such identification would be completely irrelevant to the entitlement of the brokers to utilize the arbitration agreement. The transference by assignment of the substantive chose in action necessarily involved the transference of the procedural means of enforcement of it.

> 41. There is also authority which suggests that under the Third Parties (Rights against Insurers) Act 1930, which effects a statutory assignment of rights of action in a case where the assured has become bankrupt or been wound up, the party to whom the benefit of a right of action under the liability insurance contract has been transferred is obliged to pursue that right in accordance with an arbitration agreement in the contract of insurance even if that agreement is expressed to refer only to the parties to the contract of insurance and not in terms wide enough to cover a statutory assignee: see The Padre Island [1984] 2 Lloyd's Rep 408.

> 42. It is against this background that one must consider the words in subsection (1) "… the third party shall be treated for the purposes of that Act as a party to the arbitration agreement …". In my judgment these words clearly reflect and are entirely consistent with the assignment analogy. The third party never was expressed to be a party to the arbitration agreement but, in view of the fact that he has in effect become a statutory assignee of the promisee's right of action against the promisor and because, by reason of the underlying policy of the 1999 Act expressed in section 1(4) he is confined to the means of enforcement provided by the contract to the promisee, namely arbitration, he is to be treated as standing in the shoes of that promisee for the purpose only of the enforcement of the substantive term. Thus although the wording of sub-section (1)(a) – "is subject to a term" – is capable of having a range of possible meanings, one of those meanings is that which I have described and, having regard to the further words of the sub-section, entirely reflects the assignment analogy referred to in the Explanatory Notes.

. . .

44. Since, as I have held, the scope of the disputes covered by all nine arbitration agreements is wide enough to embrace a dispute between owners and charterers about payment of the brokers' commission, I conclude that in the present case Cleaves were entitled and, indeed, obliged to refer those disputes to arbitration and that the arbitrators had jurisdiction to determine them."

25. Reference to the Explanatory Notes is to the Explanatory Notes which accompany the 1999 Act. The function of these Notes is explained in the Introduction:-

"1. These explanatory notes relate to the Contracts (Rights of Third Parties) Act 1999 which received Royal Assent on 11 November 1999. They have been prepared by the Lord Chancellor's Department in order to assist the reader in understanding the Act. They do not form part of the Act and have not been endorsed by Parliament.

2. The notes need to be read in conjunction with the Act. They are not, and are not meant to be, a comprehensive description of the Act. So where a section or part of a section does not seem to require any explanation or comment, none is given."

Relevant paragraphs of the Notes include:-

"**Section 1 : Right of third party to enforce contractual term**

6. *Section 1* gives effect to the central purpose of the Act. It sets out the circumstances in which a third party would have the right to enforce a term of the contract.

7. *Subsection (1)* sets out a two-limbed test for the circumstances in which a third party may enforce a term of a contract. The first limb is where the contract itself expressly so provides. The second limb is where the term purports to confer a benefit on the third party unless it appears on a true construction of the contract that the contracting parties did not intend him to have the right to enforce it (*subsection (2)*).

. . .

9. *Subsection (4)* clarifies subsection (1). The third party's right of enforcement is subject to the contract's terms and conditions. It is open to the parties to limit or place conditions on the third party's right; for example, if he wishes to enforce the right he is to do so by way of arbitration and not litigation.

. . .

11. *Subsection (6)* makes it clear that the Act is to apply so as to enable a third party to take advantage of an exclusion or limitation clause in the contract, as well as to enforce "positive" rights. The Act, for example, allows a term of a contract which excludes or limits the promisee's liability to the promisor for the tort of negligence and expressly states that the exclusion or limitation is for the benefit of the promisee's "agents or servants or subcontractors" to be enforceable by these groups.

. . .

**Section 8 : Arbitration provisions**

33. *Section 8* ensures that, where appropriate, the provisions of the Arbitration Act 1996 apply in relation to third party rights under this Act. Without this section, the main provisions of the Arbitration Act 1996 would not apply because a third party is not a party to the arbitration agreement between the promisor and the promisee.

34. *Subsection (1)* deals with what is likely to be the most common situation. The third party's substantive right (for example, to payment by the promisor) is conferred subject to disputes being referred to arbitration (see section 1(4)). This section is based on a "conditional benefit" approach. It ensures that a third party who wishes to take action to enforce his substantive right is not only able to enforce effectively his right to arbitrate, but is also "bound" to enforce his right by arbitration (so that, for example, a stay of proceedings can be ordered against him under section 9 of the Arbitration Act 1996). This approach is analogous to that applied to assignees who may be prevented from unconscionably taking a substantive benefit free of its procedural burden (see, for example, *DVA v Voest Alpine, The Jaybola* [1997] 2 Lloyd's Rep 279). "Disputes …. relating to the enforcement of the substantive term by the third party" is intended to have a wide ambit and to include disputes between the third party (who wishes to enforce the term) and the promisor as to the validity, interpretation, existence or performance of the term; the third party's entitlement to enforce the term; the jurisdiction of the arbitral tribunal; or the recognition and enforcement of an arbitration award. But to avoid imposing a "pure" burden on the third party, it does not cover, for example, a separate dispute in relation to a tort claim by the promisor against the third party for damages.

35. *Subsection (2)* is likely to be of rarer application. It deals with situations where the third party is given a right to arbitrate under section 1 but the "conditional benefit" approach underpinning subsection (1) is inapplicable. For example, where the contracting parties give the third party a unilateral right to arbitrate or a right to arbitrate a dispute other than one concerning a right conferred on the third party under section (1). To avoid imposing a pure burden on the third party (in a situation where, for example, the contracting parties give the third party a right to arbitrate a tort claim made by the promisor against the third party) the subsection requires the third party to have chosen to exercise the right. The timing point at the end of the subsection is designed to ensure that a third party who chooses to exercise his right to go to arbitration by, for example, applying for a stay of proceedings under section 9 of the Arbitration Act 1996, can do so. Under section 9 of the Arbitration Act 1996, the right to apply for a stay of proceedings can only be exercised by someone who is already a party to the arbitration agreement."

### The judgment below

26. The Appellants argued that by parity of reasoning with that in *Nisshin v Cleaves*, accepted to be applicable so far as concerns the enforcement of the indemnity, so too their entitlement to rely upon the exclusion from liability provided by Clause 17.2.1 should be regarded as subject to the same term providing for the submission of disputes to arbitration. This argument is given substance by s.1(6) of the 1999 Act, which provides that in this context the third party availing himself of the exclusion is to be equiparated with his enforcing the exclusion. The judge did not however accept this argument. In his judgment he said this:-

"103. There is a further issue as regards the exclusion clause. The claimants assert that the right of Mr Cerchione and Mr D'Avanzo to avail themselves of the exclusion clause as against Stepstone falls outside the arbitration clause. This is essentially because it is a contractual defence, as opposed to a contractual right of action which is subject to arbitration. In my view, this is correct. Whether proceedings are liable to be stayed in favour of arbitration must depend on the nature of the claim, not on the nature of an exclusion defence, because the issue has to be determined at the time the proceedings are issued (see *Sebastian Holdings Inc v Deutsche Bank AG* [2011] 1 Lloyd's Rep 106, at [62] to [63], Thomas LJ, in the context of jurisdiction clauses) and before the taking of any step in those proceedings to answer the substantive claim (s. 9(3) of the Arbitration Act 1996). In my view, the claimants are right to contend that Mr Cerchione and Mr D'Avanzo are entitled to rely on the exclusion clause (if applicable) regardless of the forum of the particular proceedings against them.

104. This conclusion is consistent with the decision in the *Nisshin* case. In that case, the brokers were seeking to enforce a positive right of action against the owners. It was held that

they were entitled to rely on the arbitration clause under s. 8(1) of the 1999 Act because they should be treated as in effect an assignee of the charterers' right to enforce payment as against the owners, and that such assignment carried with it the benefit and burden of the arbitration clause. The present case, by contrast, is concerned with a contractual defence. I agree with the claimants that there is no analogy with assignment. A right of action can be assigned, but it is not possible to assign in any meaningful way an exclusion."

### The argument on the appeal

27. Mr Mark Hapgood QC for the Appellants contends that the effect of the combination of the contractual terms and the provisions of the 1999 Act is that the Stepstone claim may only be brought against the Appellants in arbitration, unless of course the Appellants do not seek to exercise their right to be treated as a party to the arbitration agreement contained in the Partnership Deed. There are essentially three steps in his argument. First, the Appellants can potentially rely upon the exclusion from liability provided by Clause 17.2.1 which is a right or benefit which they are given under the contract and of which they can take advantage because that is the effect of s.1(1) of the 1999 Act, as emphasised here by Clause 17.14 of the Partnership Deed. Second, Clause 17.2.1 is, like all the other terms in the Partnership Deed, itself subject to the agreement of the parties to refer their disputes to arbitration. Third, the Appellants are by reason of s.8(1) of the 1999 Act accordingly to be treated as parties to the arbitration agreement as regards the dispute between themselves and Stepstone/Fortress which potentially engages the availability of the defence under Clause 17.2.1 of the Partnership Deed. Alternatively, if that last step in the argument is unavailable, then the Appellants can instead rely upon s.8(2) of the 1999 Act. They can choose to exercise their right to rely upon the arbitration agreement which is sufficiently widely drawn to encompass a dispute between Stepstone and a third party such as the Appellants arising out of or connected with the Partnership Deed.

### Discussion

28. I do not consider that the distinction drawn by the judge between a right of action and a contractual defence can in this context be sustained. Section 1(6) of the 1999 Act effectively provides that for the purposes of the Act no such distinction shall be drawn. In the language of ss.1(6) and 8(1)(a) the third party availing himself of the exclusion is the equivalent of his enforcing a term in the contract. The question therefore whether the right to "enforce" the exclusion is subject to the arbitration clause cannot be resolved simply by characterising it, rightly, as a contractual defence. The Act contemplates that the right to take the benefit of a contractual exclusion may indeed be subject to a term providing for the submission of disputes to arbitration. Whether it is so subject must be a question of construction of the agreement.

29. Turning to construction, Clause 17.14 of the Partnership Deed makes express reference in the context of the 1999 Act to rights or benefits conferred under Clause 17.2 of the Agreement. If it is accepted that the ability of the third party to enforce the indemnities provided by Clause 17.2 is subject to the arbitration clause, it is not immediately easy to see why the ability of the third party to rely upon the exclusion clause should not be regarded as similarly so subject. The circumstance that the Appellants are, arguably, entitled to rely on the exclusion clause in whatever forum they are sued does not of itself negative an intention to confer upon them the ability to contend that they are entitled, should they so wish, to have the efficacy of that protection determined in arbitration. The difficulty however which I feel about accepting Mr Hapgood's submission to that effect is that if he is right, then by reason of s.8(1) of the 1999 Act the third party has not only had conferred upon him a right or benefit but has also had imposed upon him a burden which he did not agree to undertake, viz, a positive obligation to submit to arbitration a dispute concerning his entitlement to rely upon the exclusion clause. If the third party is to be treated as a party to the arbitration agreement, which is the language of s.8(1), then it must follow that arbitrators appointed to determine whether the third party has a liability to the promisor to which the exclusion would be an answer have jurisdiction conclusively to determine that that defence is unavailable, even if the third party does not wish to participate in the arbitration and would prefer to be sued in a different forum. That result seems contrary to the principle that arbitration is a consensual process. Whilst it may be accepted that the parties intended to confer a benefit such as an indemnity on terms that if the third party chooses to avail

himself of it, he must do so by resort to arbitration, it is rather different to suppose that they intended by their contract to compel third parties to submit to a process of arbitration which those third parties had not themselves initiated. The third party has a choice whether to seek an indemnity, knowing that if he does so he must pursue it in arbitration. The third party has by contrast on this hypothesis no choice whether to be bound by an arbitration initiated by a partner to the Deed with a view to its being established therein that the third party has a liability to the partner to which the exclusion in Clause 17.2.1 affords no defence. This is a striking outcome.

30. Furthermore, if Mr Hapgood is right the contract has in my view brought about consequences which are so wholly undesirable that it must be questioned whether they were really intended. Section 8(1) of the 1999 Act provides that the third party shall be treated as a party to the arbitration agreement as regards disputes between himself and the promisor relating to the enforcement of the substantive term by the third party. It is thus not in respect of all disputes arising out of or in connection with the agreement that the third party is to be treated as a party to the arbitration clause, but only disputes relating to the enforcement of the particular substantive term of which the third party has the benefit. Mr Hapgood for the Appellants sought to meet the potential consequences of this point by contending that if it is arguable that a third party, here each of the Appellants, is entitled to rely upon an exclusion clause in relation to some or all of the claim brought against it, then it is the entirety of the dispute between the claimant and the third party which must be stayed in favour of arbitration. In this regard he prayed in aid the language of s.9 of the Arbitration Act to the effect that it is the proceedings which must be stayed, but that with respect overlooks that the proceedings are only to be stayed "so far as they concern" a matter which under the agreement is to be referred to arbitration. In my judgment neither the language of the Arbitration Act nor the language of the 1999 Act can justify a stay extending beyond the dispute so far as it concerns the entitlement of the third party to avail himself of the contractual defence. This gives rise to the wholly unsatisfactory prospect of fragmented dispute resolution. On the other hand, if I am wrong in resisting Mr Hapgood's submission, then it must follow that an arbitral tribunal constituted on the initiative of the claimant partner would have jurisdiction over the entirety of the dispute between the promisor partner and the third party, notwithstanding (a) that the third party has not agreed to arbitrate at all indeed has not agreed to anything and (b) that there are aspects of the dispute which have no connection with the question whether the third party may avail itself of a contractual defence. This seems a very odd and unprincipled outcome.

31. Recognising that fragmented dispute resolution is undesirable and may plausibly be said not to have been intended by sensible business people, Mr Hapgood submitted that if resort to s.8(1) of the 1999 Act cannot bring about, at the election of the third party, the resolution of the entire dispute in arbitration, this circumstance of itself compels the conclusion that the third party must be able to resort to s.8(2). Reliance upon s.8(2) does not present the same conceptual difficulties as reliance upon s.8(1) because it provides that the third party shall only be treated as a party to the arbitration agreement if he exercises the right to arbitrate, or, in the language of paragraph 35 of the Explanatory Notes, if he has "chosen to exercise the right". However s.8(2) is only applicable where the contract on its true construction gives to the third party a right to arbitrate. Clause 17.11 on its face refers only to disputes that "the parties hereto" are unable to resolve, without any indication that "the parties hereto" is intended to refer to any class wider than the four partners who are party to the Agreement. It was Mr Hapgood's submission that in the context of the 1999 Act the arbitration clause must be read as comprising within its scope a dispute with any third party arising out of or connected with the Agreement. I cannot accept this argument. Clause 1.3 of the Agreement provides that references in the Agreement to the parties are references to the parties to the Agreement. That precludes acceptance of a diluted form of Mr Hapgood's submission which would involve the disputes comprised within the arbitration provision including disputes in relation to or arising out of the acts of the Appellants as key managers conducting the business of the Blue Skye Fund. I also do not accept that that part of Clause 17.11 which is the arbitration provision can be given an expanded meaning by reference to the governing law provision which precedes it. This provision introduces in "relationships of the parties hereto" a broad concept. Such relationships could potentially give rise to disputes which could not properly be described as disputes arising out of or in connection with the Agreement.

32. The judge's first reason for refusing a stay was that the Appellants have not in fact, in their pleaded Defence, relied upon Clause 17.2.1 as excluding their liability. The judge said this:-

> "102. I turn to the argument as it revolved around the exclusion clause in Clause 17.2 given to "any Associate" and thereby Mr Cerchione and Mr D'Avanzo. The position is similar to that as regards the indemnity. Mr Cerchione and Mr D'Avanzo do not rely on the exclusion clause in their defence. It was suggested in oral argument that consideration might be given to an amendment in this regard. I agree that in applying the statutory stay under s. 9 Arbitration Act 1996, it is the substance of the matter which is important rather than the formal nature of the proceedings. But I do not think that the prospect of a possible amendment can alter the outcome of the issue that I have to decide. Mr Cerchione and Mr D'Avanzo do not seek to avail themselves of the substantive term, and there is no dispute relating to the enforcement of the substantive term by them. Section 8(1) does not (in my view) result in them being treated as parties to the arbitration agreement by reference to the exclusion clause."

33. We too were assured that it is the intention of the Appellants to seek permission to amend their Defence so as to rely upon Clause 17.2.1 so far as concerns the claims formulated in ordinary negligence and/or imprudence.

34. For my part I do not believe that it is legitimate in this context to have regard to the contents of the Defence, for the simple reason that an application under s.9 of the Arbitration Act must be made before the impleaded party takes any step in the impugned proceedings to answer the substantive claim. Service of a defence is undoubtedly the taking of a step to answer the substantive claim. The availability of a stay has to be ruled upon on the basis of the materials placed before the court on the application to stay, which will not ordinarily include a defence. However I cannot agree with the judge that the availability of a stay must in this context depend upon the nature of the claim, and not upon the nature of an "exclusion defence". If s.8(1) of the 1999 Act is to have any content at all, then having regard to the terms of s.9(3) of the Arbitration Act it must be possible for the court to impose a stay in favour of a third party upon the basis of an intimation of an intention to rely upon a contractual defence which is subject to a term providing for the submission of disputes to arbitration. Whether Mr Hibbert went so far as to intimate such an intention may be open to question, but I would if it were necessary read his statement that the Appellants "are entitled to avail themselves" of Clauses 17.2.1, 17.2.2 and 17.2.3 as necessarily in the context communicating an intention to do so.

35. Mr Ewan McQuater QC for Fortress pointed out that irrespective of the outcome of this appeal the action brought by Fortress and the other Claimants against the remaining Defendants will continue, so that fragmentation of the dispute is in fact inevitable. Whilst that is of course true, the stay imposed on the Fortress claim in right of Stepstone against Blue Skye GP Limited, Omega Partners and Omega Skye Partners means that all claims as between parties to the Partnership Deed have now been removed from the action and must proceed in arbitration. Mr Hapgood for his part submitted that it must have been obvious to the parties to the agreement that if there was to be a claim alleging conspiracy or other wrongdoing by the general partner to the detriment of the limited partners, it would be inevitable that the Appellants, as Key Managers and owners and controllers of the general partner, would be involved therein. He asks rhetorically whether it can really have been intended that in respect of the same conduct the limited partners would be obliged to sue the general partner in arbitration but permitted to sue in court by action the owners and controllers of the general partner at whose direction it acted. The intention of the parties must, he submitted, have been that third parties and a fortiori the Key Managers, being sued on a claim arising out of or under the Agreement, could take the benefit of the arbitration agreement.

### *Conclusion*

36. I have already explained why I have difficulty both in acceding to Mr Hapgood's submissions and in accepting the correctness of the approach which led the judge to reject the similar arguments addressed to him. The analogy with the analysis which is accepted to hold good for reliance on the indemnity afforded by Clause 17.2.2 is beguiling. Ultimately however I have concluded that the analogy is incomplete and

misleading. The fact that one is a contractual right of action and one a contractual defence is in my view relevant but not in itself P determinative. It is relevant because when construing the agreement in order to ascertain the intention of the parties thereto, it is easier to conclude that the parties intended enforcement of the contractual indemnity by a third party to be subject to the arbitration provision than it is to conclude that the parties intended reliance on the contractual exclusion by a third party to be likewise subject to the arbitration provision. As Mr McQuater pointed out there is no express language in the Agreement to the effect that either the indemnity or the exclusion is subject to the arbitration clause. In each case that result can only be achieved by way of inference. It is however to impute to the parties a really very far reaching intention if it is to be inferred that they positively intended to bring about the result that third parties would be bound by the outcome of arbitration proceedings which they had not themselves initiated in order to secure a benefit apparently conferred upon them by the Agreement. That is, as I have explained, the inevitable consequence of treating third parties as party to the arbitration agreement in the manner prescribed by s.8(1) of the 1999 Act, in contrast to the consequences of treating them as a party in the manner prescribed by s.8(2) of the Act. By enacting s.8(1) in the face of the difficulties pointed out by the Law Commission, and by its incorporation into s.8(1)(a) of the language also used in s.1(6), Parliament must I think be taken to have envisaged that this result could indeed be achieved. That said, I do not consider that paragraph 34 of the Explanatory Notes deals with this situation, albeit I do not entirely understand what is meant in this context by the expression "a pure burden". However that may be, the consequences are so far reaching that very clear language is I think required to bring about the result that the right of a third party to avail himself of an exclusion clause in an agreement to which he is not party is in turn subject to an arbitration clause in the same agreement. In my judgment there is no such clear language in the Partnership Deed.

37. It follows that I would uphold the decision of the judge to refuse a stay, albeit not for the reasons which he gave. There is an irony in this outcome in that a reluctance to conclude that the Appellants are bound by an arbitration provision has led to a denial to the Appellants of the opportunity to take advantage of that provision in order to compel Fortress to pursue its claim in arbitration. However for the reasons which I have already given the Appellants could not in reliance on s.8(1) of the 1999 Act compel arbitration of the entirety of the dispute between themselves and Fortress. In any event, the irony of the outcome cannot deflect the court from a principled approach. To accede to the Appellants' case on the basis of the language used in this Agreement would, in my judgment, give a hostage to fortune for the future.

38. I would dismiss the appeal.

**Lord Justice Toulson:**

39. I agree and I would not wish to repeat or paraphrase Tomlinson LJ's full analysis. However, because the facts are complex, and so has been the argument in some respects, I would like to set out as simply as I can my reasons for agreeing, with particular reference to the different nature and purpose of the provisions contained in sections 8(1) and 8(2) of the Contracts (Rights of Third Parties) Act 1999.

40. In the court below, the second and third defendants ("the managers") based their argument for a stay of the proceedings brought against them by Fortress on section 8(1). In this court Mr Hapgood QC (who did not represent the managers below) relied alternatively on section 8(2).

41. The targets aimed at in section 8(1) and 8(2) are helpfully identified in the Explanatory Notes referred to by Tomlinson LJ at [25].

42. Section 8(1) is aimed at the situation in which a contract contains a promise by the promisor, P, to confer a conditional benefit on a third party, T; that is, a substantive benefit, subject to a procedural condition that T may enforce it only by a particular process, i.e. arbitration. In such a case T is to be treated as a party to the arbitration agreement in relation to the enforcement of the benefit. If T attempted to enforce P's promise by bringing an action, it would be open to P to allow the action to proceed and to contest the claim on its merits, but P would have the right to invoke section 9 of the Arbitration Act 1996 with a view to obtaining a stay of the action.

43. In short, P has the option of letting the action proceed or of enforcing the procedural condition that T should proceed by way of arbitration. This accords with the underlying rationale that it should be open to P to attach a procedural condition to the substantive right, but P need not insist on T adhering to the condition.

44. Section 8(2) is aimed at the different situation in which a term of the contract gives a unilateral right to T to require that a dispute with P of an identified description should be submitted to arbitration. In that situation T is to be treated as a party to an arbitration agreement with P if and when T exercises the right.

45. In summary, section 8(1) allows for P to give T an enforceable substantive right, subject to a procedural condition on which P may but need not insist. By contrast, section 8(2) allows for P to give T an enforceable procedural right, which T may but need not exercise (since the right is unilateral).

46. This case turns on the effect of three parts of clause 17 of the partnership deed – clause 17.2 (headed "exculpation and indemnities"); clause 17.11 (the arbitration clause); and clause 17.14 (headed Contracts (Rights of Third Parties) Act 1999).

47. I would prefer for convenience to consider first the argument under section 8(2). I have no difficulty in accepting Mr Hapgood's argument as to the desirability of interconnected claims brought by a contracting party not only against another contracting party, but also against the managers, proceeding together. The partnership deed could not impose a burden on the managers without their consent, but it could easily have contained a provision entitling the managers to insist that any claim against them by any party to the agreement in connection with the agreement should be determined by arbitration in the same manner as a dispute between the contracting parties themselves. However, it simply does not say so and I do not consider that such a provision can be read into the language of the deed. That is the short answer to the argument under section 8(2).

48. Do the managers have a right to invoke section 9 of the Arbitration Act, so as to obtain a stay of the proceedings brought against them by Fortress, arising from section 8(1) of the 1999 Act? Here the argument is more complex.

49. Clause 17.2 gives to the managers certain rights and benefits. Their liabilities to contracting parties are limited and they have rights of indemnity against the partnership. Clause 17.4 provides that the managers may enforce those rights or benefits in accordance with the 1999 Act.

50. The arbitration term in clause 17.11 does not make express reference to disputes between a party and a third party. It provides that any dispute arising out of or in connection with the agreement which "the parties hereto are unable to resolve between themselves" shall be referred to arbitration. However, it is common ground between the parties that on the proper construction of the agreement the rights and benefits given to the managers by clauses 17.2 and 17.14 are subject to a procedural condition, such that if the managers brought an action against the partnership to enforce their rights, the partnership would be entitled to seek a stay of the action pursuant to section 9 of the Arbitration Act, provided that the partnership made its application within the time permitted. This is because it is agreed that the managers are to be treated under section 8(1) of the 1999 Act as parties to an arbitration agreement with the partnership regarding disputes relating to the enforcement of the managers' substantive rights. That has the legal consequences which I have described.

51. Under section 1(6) of the 1999 Act, T enforces a clause excluding or limiting T's liability to P by availing himself of the exclusion or limitation.

52. Mr Hapgood submitted that since the managers are to be treated under section 8(1) of the Act as a party to an arbitration agreement with the partnership as regards the enforcement of the managers' substantive rights under clause 17.2, it follows that the managers cannot advance a defence under that clause in an action brought against them by a partner or assignee of a partner, viz Fortress, but must and can do so only by arbitration proceedings, and that the managers are therefore entitled to stay of the actions.

53. I do not accept that argument. It would convert a procedural qualification of a substantive right given by the contract to T (of the kind to which section 8(1) applies) into a positive procedural right (of the kind to which section 8(2) applies).

54. If P chooses to bring an action against T, to which T claims to have an exclusion or limitation defence by reason of a contractual term intended to be for T's benefit, T must be entitled to advance that substantive contractual right in his defence. It would not make sense or accord with the purpose of section 8(1) to interpret it as preventing T from doing so in circumstances where P had chosen to sue him. If, on service of T's defence, P takes issue with T's assertion that he has such a contractual right, a question might theoretically arise whether it would be open to the claimant, P, to seek to discontinue or adjourn the action so as to enable that issue to be referred to arbitration (on the footing that T's defence would amount under section 1(6) to an attempt to enforce a substantive right which was subject to a procedural condition that P was entitled to invoke). I am inclined to the view that it would not be open to P to do so, having initially decided to sue T and thereby invoked the court's jurisdiction to decide the question of T's liability; but, even if it were open to him to do so, P would not be bound to do so, any more than P would be bound to ask for a stay under section 9 of the Arbitration Act if T had initiated proceedings by bringing an action against P for an indemnity.

55. In summary, the fallacy in the appellants' argument lies in confusing the nature of a procedural qualification of a substantive right given to T under section 8(1) with the grant of a procedural right under section 8(2). With hindsight it may be regrettable that the partnership deed did not give the managers a right to insist that any claim made against them by a partner (or assignee of a partner) in connection with the agreement should be referred to arbitration, but it did not do so.

56. The law would not be well served by the court adopting an interpretation of section 8(1) which would not reflect its true nature and purpose, in order to achieve more a satisfactory outcome on the facts of this case. The lesson is that is there is a clear difference between the objects of section 8(1) and 8(2); and that if parties want to give T a procedural right to have disputes referred to arbitration, section 8(2) provides the way to do so.

**Lord Justice Pill :**

57. I agree with both judgments.

---

**BAILII:** Copyright Policy | Disclaimers | Privacy Policy | Feedback | Donate to BAILII
URL: *http://www.bailii.org/ew/cases/EWCA/Civ/2013/367.html*